Louis J. Cersosimo v. Elizabeth M. Cersosimo

Peters, Healey, Armentano, Shea and Sponzo, Js.

Argued June 10—decision released September 14, 1982

*Elizabeth M. Cersosimo,* pro se, the appellant (defendant).

*Aaron P. Slitt,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The parties in this case were divorced in 1966.[1] At that time, the defendant wife was awarded custody of the four minor chil-

[1] The defendant obtained the divorce on her cross complaint which was uncontested after the plaintiff withdrew his complaint.

dren of the marriage and the plaintiff husband was awarded visitation rights and was ordered to pay $25 weekly as support for each of the children as well as to maintain CMS and health insurance for them.[2] He was also ordered to pay alimony in the sum of $37.50 per week. The record indicates that there have been a number of post judgment motions over the years.[3]

This appeal is from the trial court's action, on May 5, 1980, (the 1980 judgment) on the defendant's motion to modify judgment for child support and alimony.[4] Some background should be set out at this point. At the time of the 1980 judgment,[5] the plaintiff had been under an order, temporary in nature since August 11, 1978, to pay $100 per week in alimony, $75 per week in support for the child Scott[6] and the monthly mortgage payment of $195 on the family home owned by the defendant in

[2] The husband was also ordered to pay for the education of the oldest child, Michael, who was fourteen years of age at the time.

[3] These include changes in the custody of three of the children from the defendant to the plaintiff.

[4] The defendant has taken this appeal as a pro se litigant. She has filed five volumes of transcript that concern matters from January 25, 1974, through May 5, 1980. It appears she has been acting pro se since at least July 28, 1978.

[5] The 1980 judgment dated May 5 provided the following: "Defendant's Motion to Modify Judgment for Child Support and Alimony having been heard, it is hereby ordered that the Plaintiff is to continue to pay the mortgage payments of $161.00 per month. It is further ordered that the $50.00 per week order of support and the $50.00 per week order of alimony modified by the temporary order of August 11, 1978 is modified this day and Plaintiff is ordered to pay permanent child support in the amount of $125.00 per week and permanent alimony in the amount of $125.00 per week. Additionally, the court orders Plaintiff to pay $330.00 to the accountant within sixty days from the date of this order."

[6] Presumably the defendant was still paying for CMS and health insurance for Scott as originally ordered.

South Windsor.[7]   This 1978 order was to persist until the court had before it the financial data, particularly of the plaintiff's circumstances, upon which to enter a permanent order on the defendant's motion for modification of child support and alimony which was pending at that time, that motion having been filed on August 19, 1977.   This motion for modification alleged in part that "there has been a material change in the financial circumstances of the parties, and that the defendant has incurred medical bills because of cancer surgery in the past and cancer surgery that she must undergo in the near future."   After a hearing on this motion, the court, on August 11, 1978, also ordered "that an accountant selected by Mr. Colucci of the Family Relations office be appointed to determine if Mr. Cersosimo's salary is commensurate with his business' profits.   That Mr. Cersosimo is to make his last two tax returns [available].   That Mr. Cersosimo pay the accountant appointed by Mr. Colucci."

On February 27, 1979, another hearing was held. At that time, Colucci reported that he had selected an accountant, one Jerome Bascom.   The family relations officer also reported that Bascom had had an opportunity to examine the books of the plaintiff's business and the corporate and individual tax returns and had mailed him (Colucci) his report of September 12, 1978, of which he had also given the defendant a copy.[8]   As matters developed during

[7] Prior to this temporary order the defendant's brief indicates that she was receiving $50 per week as alimony and $75 per week as child support.

[8] Some question developed during this hearing as to what tax returns Bascom had examined.   Mrs. Cersosimo told the court that she had telephoned Bascom and the court questioned her as follows: "The Court:   You have indicated Mrs. Cersosimo, that his [Bascom's] statement to you was that he had not examined the

that hearing, it appeared that Colucci had not personally seen the plaintiff's personal income tax returns and the court continued that hearing to assure that these returns were properly reflected in Bascom's report as well as to check further on the defendant's claim that perhaps a motor vehicle and a piece of real estate were not properly reflected in the materials then before the court. The court, concerned that these matters be investigated further, continued the hearing for that purpose. The court went on to indicate to Colucci that he was to examine the personal tax returns, that the parties ought to be present with him, that he would answer any questions he could that the defendant had and, if he were satisfied that the information was there, then this was to be done "without having to have a physical examination of the return by Mrs. Cersosimo."[9] Upon hearing this, the defendant inquired whether the court was stating that she was "not entitled to look at those returns." The court replied: "I'm saying that I'm going to let the Court

personal returns?" The defendant answered: "According to what he said to me on the phone, no, and the only thing that he had examined were the tax returns from Granite Drug, Incorporated, of Westerly and Granite Drug of Coventry, and I did not see either of those . . . ." The defendant maintained that she understood she was to see them. The family relations officer told the court that "Mr. Cersosimo has regularly stated reservations about showing the personal income tax return to Mrs. Cersosimo. He says he will show it to me, he will show it to another accountant, but he feels that certain aspects I suppose relative to—I'm guessing, this is relative to his wife's income or whatever. So what should be the ground rules? . . ." Thereupon, the court asked the defendant: "Are you totally pro se, Mrs. Cersosimo, you don't have another counsel of record?" Her answer was, "[n]o, not at this point."

[9] The court's direction to Mr. Colucci was as follows: "The Court: I think at this point, the Court, because this has been a case of long standing and it's been quite problematic, I would be inclined to have the parties present with you. I would have you examine the personal tax returns. I would have you fill the gaps in terms of ques-

Official examine the returns and compare them with the affidavit, extract from that what is the income and answer any questions you might have, relative to his expenses and income."[10] The defendant maintained that "as a pro se litigant representing myself, Your Honor, I really object to the fact that I am not allowed to look at these records." Thereupon, the court said: "You may make a formal objection for the record at such time as the report is made to the Court."[11]

On May 5, 1980, another hearing was held at which the court had a copy of the accountant's report. At that time, the defendant asked for "$500.00 a week alimony, and $300.00 a week for child support for my son Scott, and I would like to send him to school." She argued that these figures were not out of line with the plaintiff's income "which Mr. Coluchi [sic], I believe, read off in his office as $85,000.00 or $87,000.00 for [each of] the past three years . . ." and that that would be "fair and equitable" and "bring me up to a situation where I can live in the same life style that he does." In making this claim, she read to the court article

tions that Mrs. Cersosimo has had and I would go on you're representing to the Court that you are satisfied that the information is there and that you would answer whatever questions you could answer that Mrs. Cersosimo might ask about income information, without having to have a physical examination of the return by Mrs. Cersosimo."

[10] The court told the defendant that this seeemed to be an "equitable way of getting [his income picture] before the Court" and "[i]f that creates problems that can't be resolved at the meeting, than [sic] obviously they're going to have to be resolved in court."

[11] The defendant's brief states that on March 13, 1979, the plaintiff and the defendant met with Colucci and attempted to arrive at a settlement but failed to do so. It also indicates that a court hearing set down for May 14, 1979, to resolve the motion for modification was not held because the defendant's cancer had recurred and she was unable to attend.

first, § 20 of the Connecticut constitution, maintaining that that "statute requires that an individual at my age and position in life has a right to that kind of an income."[12] Thereafter, the court entered the orders on the defendant's motion to modify child support and alimony which generated this appeal.[13] The defendant excepted to this order.

The defendant claims that the court erred in failing (1) to hear her motion for production, disclosure and examination and her objection to the court's denying her access to the plaintiff's personal income tax returns; (2) to consider that the divorce decree of the parties was granted under the law extant in 1966; (3) to apply the criteria for modification of alimony and support set forth in General Statutes § 46b-86; (4) to adhere to the criteria for awarding alimony set forth in General Statutes § 46b-82; (5) to consider article first, § 20 of the Connecticut constitution in passing upon her motion for modification of alimony; and (6) to allow her

[12] The defendant's full statement was: "Nor, if you might wish, Your Honor, I'd like to refer to at this time, to Article 50[sic], Amendment to the State Constitution which reads: 'No person shall be denied equal protection of the law or be subject to the segragation [sic] or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race or ancestry, national origin or sex,' and I would maintain, Your Honor, that that statute requires that an individual at my age and position in life has a right to that kind of an income."

She also maintained that the order in effect just prior to the May 5, 1980 hearing was only a temporary order to be viable only until the investigation of the financial data generated by her current motion for modification was completed, and that that order was not to be a "full blown . . . order" or a permanent order.

[13] The court also ordered the plaintiff to comply by May 23, 1980, with an earlier order that he maintain a life insurance policy in the amount of $25,000 with the defendant as the primary beneficiary and the children as contingent beneficiaries. In addition, the court indicated that if the school situation of the child Scott changed, the consequences of that could be considered at that time.

to give her "summarizing argument" after allowing plaintiff's counsel to do so, thus depriving her of the opportunity to rebut the argument of plaintiff's counsel by stating her dissatisfaction concerning the disposition of the financial matters involved and to raise claims under the sixth, thirteenth and fourteenth amendments to the United States constitution.

We take up initially the defendant's claim that the court erred in failing to hear her motion for production, disclosure and examination of the plaintiff's personal income tax returns and her objection to the "court ['s] denying defendant access to plaintiff's personal income tax returns."[14] The latter

---

[14] These motions, as filed, are as follows:

"DEFENDANTS MOTION FOR PRODUCTION,
DISCLOSURE AND EXAMINATION

Pursuant to section 216 of the Ct Practice Book the Defendant Elizabeth M. K. Cersosimo, Pro se in the above entitled action requests the Plaintiff Louis J. Cersosimo to respond to the following requests:

1. That Plaintiff produce and permit Defendant to inspect and to copy each of the following documents:

a) Plaintiffs 1977, 1978, 1979 personal Income Tax Returns.

b) The check which Plaintiff stated, under oath, that he gave to the Defendant for arrearages accrued from September 14, 1972 until January 24, 1974.

Defendant Pro Se
Elizabeth M. K. Cersosimo

Filed April 24, 1980."

"OBJECTION TO COURT DENYING DEFENDANT
ACCESS TO PLAINTIFF'S PERSONAL INCOME
TAX RETURNS

The defendant Elizabeth M. K. Cersosimo, Pro se in the above entitled action comes before the Court and states:

1. The Court on February 27, 1980 denied the Defendant, Elizabeth M. K. Cersosimo, Pro se copies of the Plaintiff Louis J. Cersosimo Personal Income Tax Returns.

2. Instead the Court ordered a meeting between the Plaintiff the Defendant, Attorney for the Plaintiff and the family relations

refers to the court's direction that a meeting be held between the family relations officer, the defendant, the plaintiff, and the plaintiff's counsel "so that Mr. Colucci could read to the Defendant the Personal Income Tax of Louis J. Cersosimo, Plaintiff."[15] It also maintains that "Pro se litigants, representing themselves have all the rights and privileges of counsel" and sets out her objection to the "Court's failure to allow Defendant access to these reocrds [sic], and requests the Court order the Income Tax Records given to her."

officer, Robert Collucci so that Mr. Collucci could read to the Defendant the Personal Income Tax of Louis J. Cersosimo, Plaintiff.

3. Pro se litigants, representing themselves have all of the rights and privileges of counsel.

Therefore the Defendant objects to the Court's failure to allow Defendant access to these records, and requests the Court order the Income Tax Records given to her.

Defendant Pro se
Elizabeth M. K. Cersosimo

Filed April 29, 1980."

[15] The defendant's objection, it is noted, maintains that "on February 27, 1980" the court denied her copies of the personal income tax returns of the plaintiff. This is incorrect. On February 27, 1979, sometime after the court had ordered the appointment of an independent accountant and after he had submitted a written report dated September 12, 1978, of which the defendant had a copy prior to February 27, 1979, the court heard the defendant's concerns with respect to the plaintiff's financial situation. At that time, the court ordered another meeting to address those concerns including those appearing to arise from the plaintiff's income tax returns. After the court indicated that Colucci would try to answer her questions at that time from these personal income tax returns, the defendant objected that "as a pro se litigant representing myself, Your Honor I really object to the fact that I am not allowed to look at these records." The defendant did not file, according to the record before us, the motion for production, disclosure and examination and the objection we now address until over a year later, i.e., on April 24, 1980, shortly before the final hearing of May 5, 1980. We do, however, address the motion and the objection because the court, on February 27, 1979, did respond to her pro se statement that "[y]ou may make a formal objection for the record at such time as the report is made to the Court."

The issue raised here is whether the defendant, as a pro se litigant, is entitled to the same access to the materials sought as an attorney representing her would have if she had had counsel. The transcripts, fairly read, indicate that if the defendant had had counsel, then counsel would have had an opportunity to examine the plaintiff's personal income tax returns.[16]

It is "our established policy to allow great latitude to a litigant who, either by choice or necessity, represents himself in legal proceedings, so far as such latitude is consistent with the just rights of any adverse party . . . ." *Bitonti* v. *Tucker,* 162 Conn. 626, 627, 295 A.2d 545, cert. denied, 409 U.S. 851, 93 S. Ct. 62, 34 L. Ed. 2d 94 (1972). This does not, however, mean that we will entirely disregard the established rules of procedure, adherence to which is necessary so that the parties may know their rights and the real issues in controversy may be presented and determined. See *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 39n, 411 A.2d 8 (1979); *O'Connor* v. *Solomon,* 103 Conn. 744, 745–46, 131 A. 736 (1926). "It is a well-settled principle of law that a party to a civil action may appear either pro se or through counsel. See 7 Am. Jur. 2d, Attorneys at Law § 6, p. 46; Annot., 67 A.L.R.2d 1102, 1103; *Osborn* v. *United States Bank,* 22 U.S. (9 Wheat.) 738, 829, 6 L. Ed. 204 (1824); and *Abernethy* v. *Burns,* 206 N.C. 370, 173 S.E. 899 (1934)." *Hickman* v. *Frerking,* 4 Kan. App. 590, 592, 609 P.2d 682 (1980); see 28 U.S.C. § 1654 (as amended 1949); see also *Faretta* v.

---

[16] On February 27, 1979, the court, while listening to the report of Colucci concerning the accountant's report, did say: "As to the personal tax return . . . if Mrs. Cersosimo herself had counsel, counsel would have an opportunity to examine those tax returns."

*California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Where a defendant acts as his own counsel, as he has every right to do, "his rights are subject to and will receive the same consideration as if he had been represented by an attorney." *Martin* v. *Martin,* 188 Neb. 393, 397, 197 N.W.2d 388 (1972). Such a litigant is bound by the same rules of evidence and procedure as those qualified to practice law. See *Hutter Northern Trust* v. *Door County Chamber of Commerce,* 467 F.2d 1075, 1079 (7th Cir. 1972); *Murphy* v. *Citizens Bank of Clovis,* 244 F.2d 511, 512 (10th Cir. 1957); *Hampton* v. *Gilmore,* 511 S.W.2d 442, 443 (Mo. App. 1974); *In re Ralph Brewster,* 115 N.H. 636, 638, 351 A.2d 889 (1975); *State ex rel. State Highway Commission* v. *Sherman,* 82 N.M. 316, 318–19, 481 P.2d 104 (1971).

It is apparent that the trial court denied the defendant physical access to the plaintiff's personal income tax returns solely because of the defendant's pro se status. This was error because the defendant had the same right to discovery as any other party represented by counsel would have had subject to the principle that all rulings for discovery are subject to the discretion of the trial court. See *Graham* v. *Houlihan,* 147 Conn. 321, 331, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57 (1960); *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532 (1948).

We must now determine whether the trial court's error was so prejudicial as to constitute harmful error. See *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978); *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153 (1960). We are not persuaded from what is before us, that the court's failure to exercise its discretion and make physically avail-

able to the defendant all or part of the personal income tax returns sought so prejudiced her that she was effectively hampered in the preparation and presentation of her case. See *Graham* v. *Houlihan,* supra, 332; *Kujaca* v. *Kujaca,* 159 Ind. App. 6, 15, 304 N.E.2d 870 (1973). The court had a fund of financial information available to it concerning both parties. It had ordered the parties to meet with Colucci concerning this financial information and this was done on more than one occasion. The defendant had had the plaintiff on the witness stand earlier on July 28, 1978, and had cross-examined him. The defendant herself agreed that her examination in court of the plaintiff was "very . . . lengthy." On February 27, 1979, when the defendant claimed that certain information had apparently not been ascertained by her, the court pointed out if the desired information was based on his statements under oath, then the defendant should pin down that response so it could be further elaborated upon.

Although he resided in Rhode Island, there is no claim that the plaintiff did not personally appear in Connecticut for these proceedings. The accountant Bascom was in court, at least on one occasion, and, although he had access to the tax returns, the defendant did not call him to the witness stand nor ask that he be called. She also had an "extended conversation" with the accountant on the telephone. Colucci, the family relations officer, offered to testify under oath but there is no indication that he was ever asked to. Just prior to entering the orders for support and alimony, the court stated that it had basically intended the "examination by the parties with the accountant to assure ourselves that the [plaintiff's] financial affidavit was, in fact,

correct and with that, we have pinned his income at the figure that represents $85,000 . . . ."[17] No objection was made concerning this figure. A review of the record satisfies us that under all the circumstances, the court's failure to permit the defendant's physical access to the plaintiff's personal income tax returns was not harmful error.[18]

[17] The defendant, in her preliminary statement of issues, alleges that the court erred "in not enforcing requirement according to section 380 [now section 463] of the Conn. Practice Book [financial affidavits]." It is the only one of her preliminary statement of issues not set out as an "issue" in her brief. There is no meaningful discussion of the cursory allusion to financial affidavits in her brief let alone any discussion of how she was at all prejudiced. It is not discussed in the plaintiff's brief very probably because it was not pursued on appeal. "Where an assignment of error is to be pursued, it must be briefed. Any other rule would work an injustice and hardship on the adverse party. *Cushing* v. *Salmon,* 148 Conn. 631, 633, 173 A.2d 543 [1961]." *Fleischer* v. *Kregelstein,* 150 Conn. 158, 160, 187 A.2d 241 (1962). Assignments of error are deemed to be abandoned where they are merely mentioned in the brief without any discussion of the particular issues involved. See *Stoner* v. *Stoner,* 163 Conn. 345, 349, 307 A.2d 146 (1972); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721 (1971). Moreover, both parties filed financial affidavits in 1978 after the defendant's motion for modification was filed. Under all the circumstances we consider this claim abandoned.

[18] The exercise of discretion in giving access to income tax returns in domestic cases has yielded varying results. See, e.g., *Orlowitz* v. *Orlowitz,* 199 So. 2d 97 (Fla. 1967) (order immunizing husband from all inquiry concerning his financial worth constituted an abuse of discretion despite his offer to pay any reasonable order for costs, fees or other allowances); *De Graaff* v. *De Graaff,* 163 N.J. Super. 578, 395 A.2d 525 (1978) (where divorce decree required husband to disclose federal income tax returns to former wife, judge should review returns *in camera,* excise any matters relating to income or finances of present wife and then give return, as redacted, to former wife); *De Raffele* v. *De Raffele,* 59 Misc. 2d 1042, 302 N.Y.S.2d 33 (1969) (where wife moved to examine husband as to his financial status and he had furnished certain income tax returns, husband ordered to furnish additional returns but wife's examination limited to those facts bearing on preseparation standard of living and his ability to support wife and issue of the marriage in accordance with their standard of living).

The defendant next claims that the court erred when it failed to consider article first, § 20 of the Connecticut constitution[19] in acting on her motion for modification of alimony. She argues that neither General Statutes § 46b-82 nor any other statute "state[s] exactly that the court must take into consideration the unpaid contribution that the wife has made to the accumulation of marital property." Alleging that she spent fifteen of the most productive years of her life at home so as to provide a comfortable lifestyle for the parties and their children, she claims that several years prior to the divorce, with the family savings and a loan, the plaintiff was able to open a drug store in Rhode Island that has proven to be profitable and that in turn provided him the means of opening another drug store in that state. She points out that legislatures and courts are beginning to recognize how much a woman gives up when she leaves the work world for the home.[20] Thereafter, she goes on to say "that at no time either during the time of the divorce or on any of the subsequent modifications has the unpaid service of the wife as homemaker been considered in the award" and that the amount awarded is "discriminatory and unequitable [sic]."[21]

---

[19] Article first, § 20 of the Connecticut constitution provides "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

This amendment was proposed in 1972 House Joint Resolution No. 4 and adopted at the general election on November 5, 1974.

[20] There is no evidence before us that the defendant was employed prior to her marriage to the plaintiff in 1951. Since her divorce from the plaintiff she has graduated from college.

[21] Insofar as it might be suggested that this also implies an equal protection claim for our review, any such claim is without merit on the record that is properly before us.

We cannot even reach what seems to be a gender-based claim of discrimination because the record before us provides an inadequate basis for considering it. There is simply no evidence that either the court at the time of the divorce in 1966 or the court involved in any of the "subsequent modifications" did or did not consider the "unpaid service of the wife as homemaker."[22] We do note that the divorce was granted in 1966 as an uncontested matter.[23] Over the years the defendant's alimony payments have been increased from $37.50 per week in 1966 to $125 per week in 1980. An examination of those transcripts which have been filed demonstrates that the trial judge on the modification appealed from explored and considered all the practical concerns that were evident. Facts supporting the claim must appear. *Williston* v. *Haight,* 76 Conn. 497, 503, 57 A. 170 (1904) ; see Maltbie, Conn. App. Proc. § 310. Although the defendant makes the claim with reference to herself, the lack of a factual predicate to frame the constitutional issue properly presents, in effect, an abstract question. It is apparent that "[q]uestions of constitutional law presented in abstract rather than concrete form are not susceptible of proper determination." *Taylor* v. *Robinson,* 171 Conn. 691, 693, 372 A.2d 102 (1976). This claim is, therefore, not properly before us.

In accordance with the parties' manner of presentation, we treat in combination the next three claims of error. These include the defendant's

[22] We do not know whether, on the record, any such claim was ever made.

[23] The judgment file reveals that by stipulation of the parties the plaintiff withdrew his complaint and that the defendant's cross complaint was placed on the uncontested list and that the defendant went ahead on the cross complaint and, although the plaintiff appeared by attorney, he offered no evidence.

claims that the court erred when it failed: (1) to consider the fact that the original divorce was granted in 1966 prior to the enactment into law of the No Fault Divorce Law, Public Act No. 73-373; (2) to adhere to the criteria set out in General Statutes § 46b-82 for awarding alimony; and (3) to apply the criteria for modification of alimony and child support set out in General Statutes § 46b-86. We do not agree.

The argument that the court committed error when it failed to consider that the original divorce decree was granted in 1966 before the advent of No Fault would require that we accord retroactive effect to Public Act No. 73-373. The defendant points out that General Statutes § 46b-81[24] was not in effect when the parties were divorced in 1966. She goes on to say that this statute provides that among the factors that a court shall consider in "fixing the nature and value of the property, if any, to be assigned . . . are the opportunity of each [party] for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." The defendant then claims that at the time of the 1966 divorce she "did not receive an equitable share of the accumulated material wealth even though the divorce was granted under the fault concept." She also maintains that, with the advent of No Fault divorce and the passage of the Equal Rights Amendment to the Connecticut constitution, the " 'ground rules' in awarding alimony and child support have changed" and "[i]t is now assumed that

---

[24] General Statutes § 46b-81 entitled "Assignment of property and transfer of title" was set out as § 46-51 prior to 1979, and was transferred and set out as § 46b-81 in 1979.

marriage is more of an equal partnership whereby
each spouse has the same equal opportunity to
secure their rights under the law." The circum-
stances of this case, including the fact that the orig-
inal decree has had subsequent modifications includ-
ing the present one, do not require that we answer
the question as posed.[25]

We do, however, point out that this court has
consistently expressed its reluctance to construe
statutes as having retrospective application. See,
e.g., *American Masons' Supply Co.* v. *F. W. Brown
Co.*, 174 Conn. 219, 222, 384 A.2d 378 (1978); *East
Village Associates, Inc.* v. *Monroe,* 173 Conn. 328,
332, 377 A.2d 1092 (1977). "Generally, a statute
effecting substantial changes in the law or an
amendatory act which causes changes in existing
statutes is not to be given a retroactive effect unless
it clearly and unequivocally appears that such was
the legislative intent . . . ." *Hunter* v. *Hunter,*
177 Conn. 327, 331, 416 A.2d 1201 (1979). Chapter
815j of the General Statutes is entitled "Dissolution
of Marriage, Legal Separation and Annulment" and
encompasses §§ 46b-40 through 46b-88. Section
46b-69[26] of Chapter 815j is entitled "Statutes appli-

---

[25] For some cases which recognize that, at the time of the original
decree of dissolution, it is proper, in deciding how the material
wealth of the parties accumulated during the marriage is to be
divided, to consider the contribution of each spouse when one con-
tinues to be gainfully employed and the other devotes full time to
being a homemaker. See, e.g., *Colucci* v. *Colucci,* 392 So. 2d 577
(Fla. App. 1981); *Brown* v. *Brown,* 300 So. 2d 719 (Fla. App. 1974).

[26] [General Statutes] "Sec. 46b-69. (Formerly Sec. 46-64b). STAT-
UTES APPLICABLE TO MATRIMONIAL ACTIONS. The provisions of this
chapter and sections 17-323a, 17-323b, 45-162, 46b-1, 46b-6, 46b-204,
47-14g, 52-362 and 54-27 shall apply to all actions for dissolution of
marriage, annulment and legal separation filed after May 13, 1974,
to all actions for annulment, legal separation or dissolution of mar-
riage commenced prior to said date and to appeals from, and motions
for modification of, any alimony, support or custody order entered

cable to matrimonial actions" and concerns the operative dates of various statutes with reference to the institution and pendency of certain appeals, actions and motions including § 46b-86 ("Modification of alimony or support orders and judgments") and § 46b-82 ("Alimony"). There is nothing in § 46b-69 which indicates a legislative intent that the statutes relevant to this appeal have the retrospective effect the defendant seems to claim. See also *Wood* v. *Wood,* 165 Conn. 777, 784n, 345 A.2d 5 (1974); *Tobey* v. *Tobey,* 165 Conn. 742, 748n, 345 A.2d 21 (1974).

We do not want to leave this branch of this issue without pointing out that while it is true that § 46b-81 was not in effect in 1966 as the defendant states, § 46-21 of the 1958 revision of the General Statutes (repealed, Public Acts 1973, No. 73-373, § 43) permitted alimony to take the form of not only an award of periodic payments from income, but also an assignment of a part of the husband's estate or both. *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 (1976). Alimony and property assignments, however, are now, unlike the situation

pursuant to a decree of dissolution of a marriage, divorce, legal separation or annulment rendered prior to said date. The provisions of this chapter and sections 17-323a, 17-323b, 45-162, 46b-1, 46b-6, 46b-204, 47-14g, 52-362 and 54-27 in effect on October 1, 1973, shall continue to apply to any action for dissolution of marriage, annulment or legal separation in which a decree of the superior court has been rendered after October 1, 1973, in which an appeal is pending or in which the date of taking an appeal has not expired on May 13, 1974, except an appeal from any order of alimony or custody. Sections 46-13 to 46-30, inclusive, of the general statutes of Connecticut, revision of 1958, revised to 1972, shall continue to apply to any action for divorce, dissolution of a marriage, annulment or legal separation in which a decree has been rendered and in which an appeal is pending or in which the time for taking an appeal had not expired on October 1, 1973, except an appeal from any order of alimony, support or custody."

prior to the enactment of Public Act No. 73-373, covered by two separate statutes, i.e., §§ 46b-81 and 46b-82. See *Dubicki* v. *Dubicki*, 186 Conn. 709, 713–14, 443 A.2d 1268 (1982); *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 582–83, 362 A.2d 835 (1975). The standards by which courts determine the amount of property assigned and alimony awarded are the same. "In assigning marital property . . . 'the trial court must also consider the liabilities of the parties, "the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c).' " *Dubicki* v. *Dubicki*, supra, 714–15. Despite the fact that this language was not explicitly contained in § 46-21 in 1966, "[u]nder the former statutes, we have repeatedly held that the trial court, in a divorce action, has wide discretion in the type and amount of alimony awarded; *Krieble* v. *Krieble*, 168 Conn. 7, 8, 357 A.2d 475 [1975]; *Baker* v. *Baker*, 166 Conn. 476, 488, 352 A.2d 277 [1974]; *Wood* v. *Wood* [supra, 783]; and property transferred. *LaBella* v. *LaBella*, 134 Conn. 312, 318, 57 A.2d 627 [1948]." *Pasquariello* v. *Pasquariello*, supra. The trial court in 1966 thus had the authority to fashion relief that was just and equitable and to consider the factors later explicitly set out in § 46b-81 even though § 46b-81 had not yet been passed.

We next address the defendant's claim that the court erred in failing to adhere to the criteria for awarding alimony as set out in § 46b-82 and to consider the criteria for awarding alimony and child support as set out in § 46b-86. We do not agree. The defendant argues that "the information

put before the court was sufficient to show there had been a drastic change in the circumstances of the parties *since the time of the divorce.*" (Emphasis added.) She claims in her brief that the financial affidavits of the parties filed in August, 1977, her "extensive cross examination of the plaintiff"[27] on July 28, 1978, and the report of the court-appointed accountant dated September 12, 1978, have proven a wide disparity between her income and that of the plaintiff. The orders entered, she continues, in view of the plaintiff's extensive income and holdings, constitute an abuse of judicial discretion.[28]

The defendant is correct in stating that there is a "wide disparity"[29] between her income and that of the plaintiff but she is incorrect in arguing that a drastic change in the circumstances of the parties since the time of the divorce is the standard the court should have followed in making its determination under §§ 46b-82 and 46b-86.

"It is well settled in this state that a 'modification [of alimony] is not warranted unless there has been a substantial change in the circumstances of either party, occurring subsequent to the entry of the original decree, and not contemplated by the parties at that time.' *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977); see General Statutes § 46b-86(a); *Bunche* v. *Bunche,* 180 Conn.

---

[27] No transcript of this cross-examination has been filed. See Practice Book §§ 3012 (c), 3018.

[28] Insofar as the defendant claims that the court erred here by not taking "into consideration the situation as it existed under the divorce laws in 1966," no additional discussion is merited as we have already met that claim.

[29] A "wide disparity" in the parties' respective incomes and holdings is one factor that the court weighs upon such a motion.

285, 290, 429 A.2d 874 (1980); *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976)." *Noce* v. *Noce,* 181 Conn. 145, 147–48, 434 A.2d 345 (1980). Where, however, there has been any modification granted since the entry of the original decree, a subsequent modification, such as the one before us, would depend upon changed circumstances arising not since the original decree, but since the date of the earlier modification. See *Benson* v. *Benson,* 187 Conn. 380, 383n, 446 A.2d 796 (1982); *Theonnes* v. *Theonnes,* 181 Conn. 111, 114, 434 A.2d 343 (1980). "[A] broad range of circumstances is relevant in deciding whether a decree of alimony may be modified. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 264, 413 A.2d 854 (1979); *Sanchione* v. *Sanchione,* 173 Conn. 397, 401–402, 378 A.2d 522 (1977)." *Cummock* v. *Cummock,* 180 Conn. 218, 221, 429 A.2d 474 (1980). Having found a change in circumstances, the trial court, based on a number of hearings, an assessment of the parties, a large quantity of input on the financial aspects and its articulated concerns demonstrating its awareness of the statutory criteria, entered the orders which are the subject of this appeal. Without repeating the circumstances again, we conclude that the record reveals that the trial court properly considered the criteria of § 46b-82 and that it could reasonably have concluded as it did. *Lane* v. *Lane,* 187 Conn. 144, 146, 444 A.2d 1377 (1982); *Martin* v. *Martin,* 187 Conn. 142, 143, 444 A.2d 1376 (1982).

Much of what we have said in our discussion about the claim of error directed to the order on alimony also can be applied to that portion of the motion to modify insofar as it applies to child support. The claim that the court erred in this respect is not addressed at any length in the defendant's

brief. The one child, aged seventeen in 1980,[30] who is still in the custody of the defendant, must be provided for and the parties appear to be desirous of doing so.[31]

"It is elementary that, before an order as to custody or support of children may be modified, or support terminated, there must have been a 'substantial change of circumstances' after the order was issued. General Statutes § 46b-86 (a); *Cleveland* v. *Cleveland,* 161 Conn. 452, 459–60, 289 A.2d 909 (1971); *Tippin* v. *Tippin,* 148 Conn. 1, 3, 166 A.2d 448 (1960); 24 Am. Jur. 2d, Divorce and Separation § 846." *Bozzi* v. *Bozzi,* 177 Conn. 232, 237, 413 A.2d 834 (1979). On this motion for modification of child support, we are satisfied from all the circumstances that the court considered the statutory criteria and that it could reasonably conclude as it did. *Benson* v. *Benson,* supra; *Lane* v. *Lane,* supra.

The defendant's final claim is that the court erred by failing to allow her to give her "summarizing argument" after the plaintiff's attorney gave his, thus depriving her of an opportunity to rebut his argument, to state her dissatisfaction about the way the financial matters were concluded and to raise claims under the sixth, thirteenth and fourteenth amendments to the United States constitution. This claim is without merit. The defendant does not set out in her brief any citations to the transcript demonstrating that she was prevented from

---

[30] This is Scott Daniel, a son of the parties, who was born on May 29, 1963.

[31] There is a fair inference from the transcripts that the plaintiff is willing to be of major assistance in a viable educational program for Scott.

making any such argument.[32]   See Practice Book § 3060F (b), (c) (3).   A review of the transcripts filed, however, discloses that the claim is without foundation.

There is no error.

In this opinion the other judges concurred.

---

[32] While we follow a policy of leniency toward those persons who represent themselves in legal proceedings, we cannot excuse the failure to comply with those rules which are necessary to the disposition of the appeal.   See *State v. Gibbs,* 37 Conn. Sup. 840, 841, 439 A.2d 451 (1981).