[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR MODIFICATION, DEFENDANT'S MOTION FOR MODIFICATION, DEFENDANT'S MOTION FOR ORDER AND DEFENDANT'S ORDER FOR CONTEMPT
In this matter a decree of dissolution of the parties' marriage was entered July 18, 1979. At that time the court entered an order that the plaintiff pay to the defendant as alimony and for the support of the minor child the sum of $150.00 per week to be reduced to $100.00 per week when the minor child reached the age of eighteen years. The current order then, for alimony, has been $100.00 per week since September 30, 1980.
At the time of the entry of the decree of dissolution of marriage the parties had been married for close to thirty (30) years. The plaintiff was then earning $19,600.00 per year and the defendant was earning $6,900.00 per year.
There are four motions before the court at the present time: a motion for contempt, a motion for modification filed by the defendant dated January 25, 1991, a motion for order that a sufficient sum be placed in escrow as security for the alimony order, and a motion by the plaintiff for modification of the existing alimony order. The difficulty is that neither of the parties are working at present.
At the time of the original decree the plaintiff was working as a tenured professor at the University of Bridgeport. He has his PhD degree and taught English at the University of Bridgeport for 24 years. In the year 1989 the plaintiff earned $47,526.14.
On September 1, 1990 the plaintiff and other members of the American Association of University Professors (AAUP) went on strike and the plaintiff has not worked since that date. In October the Department of Labor of the State of Connecticut found that the plaintiff and other members of his union were effectively "locked-out" of their jobs. More than half of the members of the union returned to their jobs taking a 30% reduction in salary, suffering the elimination of tenure, the elimination of certain benefits and the elimination of the right to determine courses and schedules. The plaintiff chose not to accept the terms offered by the University as a matter of principle. Of the 150 professors who originally participated in the strike, eighty-two or eighty-three of them returned to work. CT Page 4493 He received unemployment compensation of $225 per week. This terminated the middle of March.
The plaintiff remarried in November 1979 and purchased his present home which is owned jointly with his present spouse on October 1, 1980. The plaintiff's spouse is 45 years of age and works for the Immigration and Naturalization Service in Hartford. Her income may properly be taken into consideration as it is relevant to the plaintiff's current expenses. McGuinness v. McGuinness, 185 Conn. 7, 12, 13 (1981). The plaintiff testified that his share of the family's current expenses is $565.00 per week which includes the $100.00 to the defendant. The plaintiff is 59 years of age (will be 60 around the middle of May) and is in good health. Had he returned to the University of Bridgeport, his gross salary would have been $35,000.00 per year ($673.00 per week) less approximately $124.00 per week for social security and income tax withholding (computed on joint return rates with standard deduction and two exemptions without regard to additional income of spouse). He has applied for a teaching position at one college, one university and two prep schools in the area and to supermarkets and drug stores.
The defendant is 61 years of age and in poor health. She has been out of work since June, 1990, and has no health insurance. Her only income other than the plaintiff's sporadic alimony check is a contribution toward household expenses by her son, William, who is living with her at the present time. She made application to the City of Milford in mid February for welfare benefits. Her situation is pitiful and her appearance demonstrates poor health. She has a double goiter the size of a grapefruit on her neck. She testified she has extreme heart palpitations, a thyroid problem, severe hot flashes, a great deal of nervousness, and that she is unable to work because she has to lie down every two hours. She has been through 10th grade in school, has worked as a waitress, cashier, secretary for a storm window company and for nine years, until June, 1988, as a secretary in a publishing company. In June 1988 she left that job and in October took a position with a company publishing Chamber of Commerce newspapers. This job lasted until June or July, 1990.
From late 1989 to the present, she has had no health insurance and has not, therefore, sought any medical attention. Until one and a half years ago, she was under the care of Dr. Batiancita in Milford. She saw another doctor in October, 1990. Upon cross-examination, she stated she believed her thyroid condition was under control.
Section 46b-86 (a) of the General Statutes sets forth the CT Page 4494 requirements governing motions for modification. The court must find that there has been a substantial change of circumstances. Since this is a decree of 1979, the court must also find that that substantial change of circumstances was not contemplated by the parties at the time of the original decree. Darak v. Darak,210 Conn. 462 (1989). In ruling upon a motion for modification the court is entitled to consider all of the factors of 46b-82
of the General Statutes. McCann v. McCann, 191 Conn. 447, 452
(1983); Cersosimo v. Cersosimo, 188 Conn. 385, 404 (1982); Hardisty v. Hardisty, 183 Conn. 253, 258 (1981). The burden of proof is upon the moving party to show that continued operation of the order would be unfair or improper. McGuinness v. McGuinness, 185 Conn. 7, 10 (1981).
The plaintiff is out of work. This, by itself, is a sufficient ground for the court to find an uncontemplated substantial change of circumstances. The defendant's substantial change in health, by itself, is a sufficient ground for the court to find a uncontemplated substantial change of circumstance. The court in this case has a delicate balancing of the equities, and the court finds that the defendant's needs cry out for solution while the plaintiff's needs are but a temporary situation. The plaintiff must, therefore, stretch to his utmost to provide the defendant with the barest necessities of life. While the court cannot find that the plaintiff is not working to deprive his former spouse of alimony, he does have a productive capacity and might, except for a matter of principle, be employed today at a $35,000.00 salary. This is indicative of his earning capacity, and the court finds that the plaintiff's earning capacity is at least $35,000.00 per year.
The following language from the case of Lucy v. Lucy,183 Conn. 230, 234 is applicable in this situation.
 It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. [Citations omitted.] The circumstances of this action presented the trial court with such an appropriate case. There was no evidence that the defendant had any health problems. The vocational skills of the defendant as an experienced glazier who had worked, albeit with some layoffs, seventeen or eighteen years at this trade, were evident. Although he was "temporarily unemployed," he had a demonstrated earning capacity in that trade. Earning capacity, CT Page 4495 in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. [Citations omitted.] We conclude that the trial court did not abuse its discretion and could reasonably conclude as it did.
The court has considered all of the factors of 46b-82 of the General Statutes. "Although no single, statutory factor is preferred over all the others, the financial circumstances of the parties are highly significant in the determination of any monetary awards." Venuti v. Venuti, 185 Conn. 156, 161 (1981).
The plaintiff has assets of $211,111.00 and liabilities of $232.00 as compared to the defendant's assets of $50,525.00 and liabilities of $8,600.00. Plaintiff's assets in 1979 after the dissolution were $1,000.00 and liabilities of $500.00 compared to the defendant's assets of $25,000.00 and liabilities of $1,020.00.
The court grants the defendant's motion for modification and orders the plaintiff to pay to the defendant by way of alimony the sum of $200.00 per week. The plaintiff's motion for modification is denied. Having considered the factors of46b-82 of the General Statutes, the court allows counsel fees to the defendant pursuant to 46b-62 of the General Statutes and orders counsel fees and costs in the amount of $2,595.60 to be paid by the plaintiff to the defendant within 60 days of the date hereof.
The plaintiff has testified that his plans to reside in Russia for three years have been cancelled. The court finds no reason to order an escrow find to secure the alimony orders and denies the defendant's motion for order.
Finally on the defendant's motion for contempt, the court does not find that the plaintiff has intentionally and wilfully disobeyed the orders of this court. The court does not, therefore, find the plaintiff in contempt. The court does find an arrearage to April 18, 1991 of $2,017.00 and orders that this amount shall be paid in full out of the plaintiff's income tax refund together with all other arrearages due and owing to the defendant to the date of the plaintiff's receipt of the income tax refund.
EDGAR W. BASSICK, III, JUDGE CT Page 4496