STATE OF CONNECTICUT *v.* BRIAN MATTHEW ALBIN

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 8—decision released July 31, 1979

*Charles N. Sturtevant III,* for the appellant (defendant).

*Richard L. Shiffrin,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted after a jury trial of the crime of kidnapping in the second degree in violation of § 53a-94 of the General Statutes. He has appealed from the judgment rendered on the verdict.

The defendant in this appeal claims that the trial court erred in admitting into evidence a photographic array containing a "mug shot" of the defendant and in permitting testimony that one of the individuals in the array was the brother of the defendant. Additionally, he requests that this court remand the case for a full evidentiary hearing because of an allegedly improper, untranscribed remark made by the state's attorney during summation.

The jury could have found the following facts from the evidence submitted at trial. On November 9, 1975, at approximately 4:09 – 4:11 p.m., the victim, a nurse at Hartford Hospital, was abducted in her car from a parking lot near the hospital. As she put her keys in the ignition, the assailant, who was later described by the victim as a short young man with blond, shoulder-length hair, blue eyes, white complexion, and an acne-marked face, ordered her at knife-point to move to the passenger's side. Before driving off, he told the victim to keep her hands on the dashboard and warned her that he would kill her if she did not keep quiet. She succeeded in escaping by leaping from the car at an intersection approximately five minutes traveling time from the parking lot.

At trial the primary issue in contention was identification.[1] In addition to the victim's testimony

---

[1] The fact of abduction itself and the time sequence of the incident were corroborated by substantial evidence. In addition to the victim's testimony, there was evidence from the victim's time card,

identifying the defendant as her abductor on November 9, 1975, a security guard at Hartford Hospital, Anthony Ruggiero, also testified. Ruggiero asserted that he had seen the defendant in the lobby of Hartford Hospital sometime after 3 p.m. on November 9, 1975, and again in a hospital parking lot at 3:40 p.m. Ruggiero made an in-court identification and stated that four days after the incident he had identified the defendant from a photographic grouping of eight persons, which the state offered in evidence. The security officer further testified that the same photographic identification procedure took place at the hospital within a week after his initial viewing of the photographs. Police detective Mildred Wertz attested to the second identification procedure, and at trial she testified that one of the photographs in the group shown to Ruggiero was a picture of the defendant's brother.

## I

On four occasions within the last three years we have been confronted with the issue whether a trial court erred in admitting police photographs into evidence for the purpose of identification.[2] In determining whether the trial court has abused its discretion in admitting such evidence we have held that such photographs are admissible if they are relevant and material and if their probative value outweighs their prejudicial tendency. *State* v. *Peary,* 176 Conn. 170, 175, 405 A.2d 626, cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072; *State* v.

the phone call received by the police, and the discovery of the victim's abandoned, still running car mired in a cemetery near the intersection where the victim escaped.

[2] The parties have referred to the photographs as "mug shots," which typically involve pictures of the subject showing both a front and profile view. See generally, annot., 30 A.L.R.3d 908.

*Crowe,* 174 Conn. 129, 131, 384 A.2d 340; *State* v. *Robertson,* 172 Conn. 9, 10, 372 A.2d 128; *State* v. *Woods,* 171 Conn. 610, 612, 370 A.2d 1080; see also *State* v. *Turcio,* 178 Conn. 116, 134–35, 422 A.2d 749.

Here, the state's proof on the issue of identification rested solely on the testimony of two witnesses: the victim and the security guard, Ruggiero. Although Ruggiero had already made a positive in-court identification of the defendant, we cannot conclude that the probative value of calling the jury's attention to Ruggiero's previous out-of-court identification was minimal. Since the witness' identification of the defendant rested on two brief observations of the defendant in the lobby and in the parking lot of the hospital before he was aware of the commission of the crime; compare *State* v. *Peary,* supra, 175; the state's introduction of the photographs represents a logical offer to demonstrate that the reliability of its witness' identification did not rest solely upon what might be construed as a pro forma in-court identification from the witness' chair. As the defendant's brief states: "Credibility of the witnesses was the key to both the State's case and defendant's defense."

The defendant contends nevertheless that the probative value of the photographs was outweighed by their prejudicial effect in that their introduction would impermissibly suggest to the jury that the defendant had engaged in prior criminal misconduct. In each of the quartet of recent cases previously mentioned, we considered similar claims; as is true in this case, we could find nothing to indicate that the trial court had abused its discretion. *State* v. *Peary,* supra, 175–76; *State* v. *Crowe,* supra, 131; *State* v. *Robertson,* supra, 10; *State* v. *Woods,* supra, 612.

In the present case, considerable prophylactic measures were taken to insure that the manner in which the photographs were introduced mitigated any possible prejudicial effect. The jury was excused during the extensive discussions among the trial court and both trial counsel about the manner in which the photographs were to be introduced. Second, the trial court admonished the jury not to draw any inferences from their absence during discussion of questions of law. Third, the photographic array of pictures of eight persons was taped to a single cardboard placard. All markings had been cut from the front of the pictures and they were taped to the placard so that notations on their reverse sides would be hidden.[3] While we reiterate the admonition in *State* v. *Peary,* supra, 176, against indiscriminate use of "mug shots" for identification, in light of the circumstances of this case, we cannot say that the trial court erred in admitting this evidence.

---

[3] The defendant claims that the remarks made by Ruggiero prior to the introduction of the photographic array in evidence alerted the jury to the origin and possibly prejudicial nature of the exhibit. Ruggiero's remarks were brief and gratuitous; they consisted of noting that the photographs were altered by cutting from the original state in which they were shown to him after the abduction. At trial the defendant did not make any specific objection to the remarks or request that the jury be told to disregard them. Nor does the defendant specifically claim on appeal that the admission of those remarks was error. See *State* v. *Bartee,* 167 Conn. 309, 313, 355 A.2d 250.

In any event, witness Ruggiero's unresponsive and isolated remarks cannot be considered to have added significantly, if at all, to whatever prejudicial tendency may have been inherent in the array itself. His comments could serve only to bring the jury's attention to the obvious—that the photographs had been cut was apparent on their face. Moreover, the jury, in light of Ruggiero's remark about the loose form in which he originally viewed the photographs, could reasonably have inferred that they were cut to fit conveniently on the cardboard placard.

## II

The defendant's second claim of error concerns the admission into evidence of the testimony of Detective Wertz that among the photographs security officer Ruggiero viewed during his pretrial photographic identification was a picture of the defendant's brother. The defendant contends that the prejudicial tendency of Detective Wertz's testimony as to the identity of one of the pictures outweighed its probative value. The reliability and credibility of witness Ruggiero's identification was necessarily augmented by testimony showing his ability to distinguish between the defendant and a person who resembled the defendant closely enough to be, in fact, his brother. To be sure, as the defendant points out, the probative value of this testimony may be limited because the jury did have the opportunity to review the photographs and to ascertain on its own the reliability of an identification based on the photographic array. Nonetheless, whatever probative value attaches to the testimony of Detective Wertz must be balanced against the nugatory prejudicial effect of that testimony.

The defendant's brother did not testify, and the defendant's argument—for which he cites no authority—that such evidence would undermine the credibility of the defendant and his parents, all of whom were witnesses for the defendant's alibi, proves far too much. To assume that the jury would infer from Detective Wertz's testimony that the testimony of the defendant and his parents was unworthy of credibility because, at some point, a "mug shot" was taken of the defendant's brother is to tar the jury's reasoning with a stain that would taint any evidence from which specious inferences

could possibly be drawn. In light of these circumstances, we cannot say that the trial court erred in admitting Detective Wertz's testimony.

## III

The defendant's final contention involves the alleged impropriety of a statement made by the state in its closing argument. He maintains that the state's attorney remarked that the defendant's parents were confused about whether they were to attend a basketball game on the afternoon of November 9, 1975, because that time of year was football season. The defendant's claim is that the state's attorney's comments were improper and calculated to undermine the credibility of the defendant's parents' alibi testimony and consequently denied the defendant a fair trial.

The trial court denied the defendant's motions for a new trial, a mistrial, and to release the jurors from their oath of secrecy to ask them for their recollections of the closing argument. Although the defendant's motion for a new trial was couched in terms of newly discovered evidence, it is clear that the basis of all his motions concerned solely the propriety and effect of the state's attorney's comment. The defendant, while not specifically claiming error in the trial court's denial of his motions, now requests that this court remand the case for a full evidentiary hearing on the issue of the state's attorney's comment.

As the defendant's request reveals, the procedural posture by which this petition for remand comes to us is problematic. No transcript was made of the closing argument, and neither the record nor the transcript offers any indication of an objection, exception, or timely motion for mistrial on the issue

of the propriety and effect of the state's attorney's alleged comment so as to afford the trial court the opportunity to cure any impropriety at the time of trial. Cf. *Duggan* v. *Esposito*, 178 Conn. 156, 160–61, 422 A.2d 287; *State* v. *DeGennaro*, 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95. Only some seven weeks after the trial concluded did the defendant make his motions relating to this issue and present an affidavit from his attorney as to what he claims the state's attorney said.

It is unclear what the defendant expects a hearing to accomplish. He asserts that "the request is not to inquire into anything which only the jurors experienced, but simply to verify a statement made in open court." However, to reiterate, in ruling on the defendant's motions the trial court had before it the defense attorney's affidavit as to what was allegedly said, and the defendant does not claim that the trial court erred in denying his motions on the basis of the affidavit. In light of these circumstances, his unusual and extreme request cannot now attempt to take advantage of as well as obscure his failure to develop an appropriate record for the presentation of his claims on appeal.[4] See *State* v. *Paluga*, 171 Conn. 586, 598–99, 370 A.2d 1049; *State* v. *Vega*, 163 Conn. 304, 308, 306 A.2d 855; *State* v. *Murphy*, 124 Conn. 554, 567, 1 A.2d 274.

There is no error.

In this opinion the other judges concurred.

[4] By means of his request, the defendant seeks to avoid explicitly advocating either of two positions, both untenable under the facts of this case: that the affidavit in this context represents an adequate record to claim that the trial court erred in denying his motions or, in the alternative, that the record created by him is inadequate even with the affidavit, and therefore, we should remand to afford him another opportunity to create an adequate record.