STATE OF CONNECTICUT *v.* RALPH A. MATURO
(10150)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and COVELLO, Js.

Argued October 5—decision released November 30, 1982

*Frank A. Leone,* with whom, on the brief, was *Samuel H. Teller,* for the appellant (defendant).

*Edward F. Spinella,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

PARSKEY, J. The defendant was charged with robbery in the third degree in violation of General Statutes § 53a-136. The jury returned a guilty verdict and the defendant was sentenced to serve a term of not less than one nor more than three years.

The jury could reasonably have found the following facts: On October 17, 1979, the victim, Michael Nicoletti, was employed at the Cumberland Farms Store located at 241 Silver Lane, East Hart-

ford. Nicoletti closed the store at 10 p.m. leaving every other light on in the store. As Nicoletti left the store he was met by two white males who requested that he open the store in order that they might purchase some beer. Nicoletti refused. Additionally, Nicoletti observed a third white male standing by the rear of the building. This encounter lasted about one minute during which time Nicoletti was only two feet from the two males.

After refusing to open the store, Nicoletti walked to his car which was parked under a floodlight in the store parking lot. Nicoletti climbed into his car and was about to start the engine when he was kicked in the face by one of the males who had spoken with him in front of the store. Nicoletti was knocked across the front seat. The interior lights of the car were on. One of the assailants was on top of Nicoletti and took his wallet and car keys, and removed the leather coat that Nicoletti was wearing. The other assailant held Nicoletti's legs during the struggle. The third male did not participate in the attack. The attacker on top of the victim attempted unsuccessfully to remove the victim's jewelry. During the struggle which lasted approximately five minutes Nicoletti remained conscious and constantly viewed the attacker on top of him. The defendant was later identified as being this attacker.

When the headlight beams of an approaching car were cast upon the attackers, they fled across Silver Lane into a wooded area. The victim sought aid at a nearby pizza parlor and the police were summoned. The victim described the defendant as a white male having long, curly, dirty blond hair, a mustache, in his early twenties and of an average but thinner build than the other assailant whom

he described as being about six feet tall, husky with short dark hair and wearing a flannel shirt and jeans.

Shortly after the attack the victim, accompanied by Detective Anthony Land of the East Hartford police department, cruised the neighborhood in search of the assailants. Nicoletti was then taken to the hospital. Prior to receiving any treatment, however, he was returned to the area of the Cumberland Farms store in order to view four suspects in police custody. It was then approximately 11 p.m.

The four suspects, one of whom was the defendant, were lined up in front of a package store. Lighting was provided by overhead street lights some sixty-eight feet away. The suspects were not handcuffed. Of the four suspects, only the defendant had a mustache. Two of the individuals in the lineup were considerably shorter than Nicoletti's attackers.

Nicoletti, while seated in Land's cruiser some sixty-five feet from the lineup, positively identified the defendant as being one of the assailants. Nicoletti then walked up to within four feet of the lineup and again positively identified the defendant as one of the perpetrators. Nicoletti excluded two of the suspects as positively not being the culprits. Nicoletti was unable to make a positive identification as to the fourth individual. After being cautioned about the gravity of making an identification by Sergeant Roger Boucher of the East Hartford police department, Nicoletti again viewed the suspects and again positively identified the defendant. The defendant and the fourth individual were subsequently arrested.

The defendant challenges the court's denial of his motion to suppress the identification testimony of the victim on the ground that the testimony was tainted by an unnecessarily suggestive "line-up."

Whether a particular identification procedure violates a defendant's due process rights involves a two-pronged inquiry: first, it must be determined whether the procedure was unnecessarily suggestive; and second, if it is so found, it must then be determined, based on the totality of circumstances, whether the identification is nevertheless reliable. *State* v. *Hamele,* 188 Conn. 372, 376, 449 A.2d 1020 (1982), and cases cited.

The victim reported to the police that he observed three white males in the vicinity of the Cumberland Farms store at the time of the incident. Two, who were in the front of the store, participated in the robbery; the third was observed at the rear of the building. An hour later the police observed a pick-up truck in an area near the store. The truck was traveling from the direction in which the assailants had run. The truck was stopped due to the furtive movements of two passengers in the bed of the truck who had ducked upon seeing the police. It was found to contain four white males. These four possible suspects were brought to the front of a package store to be observed by the victim. Although the four men were not of the same height or build and only one, the defendant, had a moustache, it is difficult to conclude that the particular arrangement, in the circumstances of this case, was suggestive. The procedure followed in this case is not comparable to the one-to-one confrontation which we have held inherently and significantly suggestive; *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976); because it conveys the message that

the police have reason to believe the suspect guilty. *State* v. *Willin,* 177 Conn. 248, 251, 413 A.2d 829 (1979). By contrast, the police here presented four possible suspects, who were found near the scene of a crime not very long after it occurred, at least one of whom fit the description previously given to the police. At this stage, it was important for the police to separate the prime suspect gold from the suspicious glitter, so as to enable them by quickly releasing the innocent parties to continue their investigation with a minimum of delay. That the police were attempting to sift out the possible suspects is confirmed by the fact that after the victim had positively identified the defendant, positively rejected two others and expressed some doubt about the fourth person, one of the police officers took the victim aside and advised him of the seriousness of the matter after which he confronted the four at a close distance and reaffirmed his previous positions. While a lineup of one giant among a group of Lilliputians is obviously an impermissibly stacked deck, in a situation such as this one where the police are looking for possibly three suspects, no two of whom were described as having similar features, presenting four disparate persons lacks the customary characteristics of suggestibility.

Even were we to assume that the procedure was unnecessarily suggestive, the identification satisfied the reliability test. The victim had his assailant under close observation for a total of approximately six minutes; his description of the assailant accurately described the defendant; he positively identified the defendant three times, twice face to face; he did so immediately and without hesitation; and the elapsed time of approximately one hour between the offense and the identification was reasonable.

*Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (two days); *State* v. *Theriault,* 182 Conn. 366, 438 A.2d 432 (1980) (five hours); *State* v. *Middleton,* supra, (forty minutes).

The defendant next contends that the court erred in admitting certain extrajudicial statements of the defendant and in instructing the jury regarding consciousness of guilt. At trial, the state, through Officer Patricia Topliff, introduced several statements made by the defendant. Topliff testified that the defendant, while seated in a police cruiser after the lineup, said to the victim, "[y]ou'll be sorry for this" and "I will get you." Prior to revealing the content of these remarks the officer was asked to characterize them. She described the statements as "threats." The defendant's counsel objected to this characterization and the objection was sustained. Counsel did not request a curative instruction and the court gave none.

The defendant asserts that these statements were erroneously admitted and that this error was compounded by their allegedly improper characterization as threats and by an allegedly defective jury instruction. The characterization by Topliff notwithstanding, it is a fair inference that the defendant's statements, given their context, were indeed threats. "In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act. *State* v. *Cronin,* 64 Conn. 293, 304–5, 29 A. 536 [1894]." *State* v. *Moynahan,* 164 Conn. 560, 595–96, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). In determining the admissibility of a threat to show consciousness of guilt; *State* v. *Moynahan,* supra,

596–97; the court first considers whether its prejudicial tendency outweighs its probative value. *State* v. *Moynahan,* supra, 597; *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970); *State* v. *Johnson,* 160 Conn. 28, 33, 273 A.2d 702 (1970). The trial court, considering the context and content of the defendant's statements, quite properly could have concluded that they were threats and that in balancing their probative value against their prejudicial tendency the scales weighed in favor of their admissibility.

The defendant asserts that the characterization of his statements as threats was highly prejudicial and was an improper invasion of the jury's function and also constituted an undue erosion of his presumption of innocence. The effect of the officer's remark, if prejudicial, was curable by proper instruction. The defendant after having successfully objected to the question failed to request a curative instruction or to take an exception from the court's failure to charge. We therefore do not consider it. Practice Book § 854. See *State* v. *Albin,* 178 Conn. 549, 556, 424 A.2d 259 (1979).

The defendant further claims that the court's jury instruction on consciousness of guilt[1] was defective because it did not include a reference to the principle that if a fact is capable of two constructions,

---

[1] The court charged the jury with regard to consciousness of guilt as follows:

"Whenever a person is on trial for a criminal offense, it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal act which may fairly be proposed to have been influenced by that act. The manner in which he conducted himself when asked by others in respect to the subject purveyed in this hearing may also be shown. If he should be in possession of or should attempt to conceal anything acquired by the crime or should make false statements respecting himself or as to

one consistent with innocence and one consistent with guilt, it should be given the construction consistent with innocence. This claim is without merit.

"The charge is to be read as a whole and individual instructions are not to be judged in 'artificial isolation' from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978) ; *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977) ; *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 635 (1974)." *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982). Elsewhere in its charge, the court specifically instructed the jury that if evidence offered is capable of two reasonable constructions, one of which is consistent with innocence, it is to be given that construction.[2] Read as a whole, it is apparent that no injustice resulted from the court's charge.

his whereabouts at the time of the affair, these might be shown because such conduct or such statements might tend to show a guilty connection by the accused with the crime charged.

"Now, the state claims that certain acts were performed by the defendant, certain statements were made by the defendant and certain conduct carried out by the defendant and that they constituted a consciousness of guilt. It is up to you as judges of the facts to decide whether or not certain acts, statements or conduct of the defendant reflects consciousness of guilt and to consider such in your deliberations in conformity with the law."

[2] The court charged the jury on reasonable constructions as follows:

"[T]he accused is innocent of the crime here charged unless and until the evidence produced before you here in the court satisfies you of his guilt beyond a reasonable doubt.

"Now, this requires that if a piece of evidence offered is capable of two reasonable constructions, one of which is consistent with innocence, it is to be given that construction. The accused does not have

We find the defendant's three remaining issues to be without merit warranting only summary discussion.

The defendant contends that the court abused its discretion by permitting the state to introduce rebuttal testimony with respect to the certainty and circumstances of the victim's identification. The state's testimony was directed at refuting the evidence offered by the defendant, and we find no abuse of judicial discretion in the ruling of the court. See *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975).

The defendant next asserts that the court erred in not specifically instructing the jury as to the dangers of eyewitness identifications. While in some circumstances, such an instruction should be given if, as here, requested; *State* v. *Tinsley,* 181 Conn. 388, 393–94, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Harden,* 175 Conn. 315, 321–22, 398 A.2d 1169 (1978); the factual circumstances of this case do not warrant such an instruction. Here the identification was neither dubious; *State* v. *Tinsley,* supra, 394; nor did it present any special difficulties. *State* v. *Harden,* supra, 322.

The defendant in his final claim of error asserts that the evidence was insufficient to justify the verdict of guilty and that the court erred in not granting his motions for acquittal or for a new trial.

---

to prove that he did not commit the offense with which he is charged. The state must prove that he did and to prove that, it must prove every essential element going into making up the offenses charged. The burden of proving the guilt of the accused is upon the state. It is not sufficient for the state to make out a case of probable guilt and call upon the accused to refute it. The state must prove guilt beyond a reasonable doubt."

Reviewing the evidence as favorably as possible with a view toward sustaining the verdict, and then deciding whether the verdict is one which jurors acting reasonably could have reached; *State* v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977) ; we conclude that the conviction must stand.

There is no error.

In this opinion the other judges concurred.