## MICHAEL DeMILO ET AL. *v.* CITY OF WEST HAVEN
### (10351)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 10, 1982—decision released April 5, 1983

*Charles H. Fischer, Jr.*, with whom were *Brian T. Fischer* and, on the brief, *Robert Reilly*, for the appellant-cross appellee (defendant).

*Benson A. Snaider*, for the appellees-cross appellants (plaintiffs).

ARTHUR H. HEALEY, J. In this appeal the defendant, the city of West Haven (city), is challenging the propriety of the trial court's order assessing treble damages against it pursuant to General Statutes § 52-566.[1] By way of a cross appeal, the plaintiffs have raised a number of issues. They claim that the trial court, *O'Sullivan, J.*, erred in failing to set aside the verdict as against the law and as inadequate; in disclosing to the jury that their verdict, if for the plaintiffs, would be trebled; and in directing a verdict for the defendant on the first two counts of its amended complaint. We hold that the trial court did err in assessing treble damages against the city under the particular circumstances of this case. In regard to the claims raised by the plaintiffs, we find none of the issues to be presented properly. Therefore, we do not reach the merits of their cross appeal.

The plaintiffs, five in number, are the owners of three parcels of property located in the city of West Haven, and one parcel located in the town of Orange. While the three parcels in West Haven are contiguous, access to the parcel in Orange is blocked by the Oyster River. In 1960, a bridge was built over the river by C. W. Blakeslee & Sons, Inc. to provide a means of access to the property in

---

[1] General Statutes (Rev. to 1979) § 52-566 provides: "Any person who wilfully removes or destroys any part of any bridge, or of its approaches, shall pay treble damages to the owner thereof or to the party bound to maintain the same."

Orange. This bridge consisted only of two forty-eight inch culverts covered with fill. The installation of the bridge caused extensive flooding of the property located upstream from it. In the ensuing years, residents of the area whose property was flooded made a number of complaints to officials of the city of West Haven. In 1974, as a result of an investigation by the city into the flooding, it undertook to clean and align 600 feet of the Oyster River, which included that portion of the river which passed through the plaintiffs' property. As part of this project, the two culverts were removed, leaving the plaintiffs without any access to their property in Orange. No compensation was paid to the plaintiffs for the removal of this bridge, nor did the city of West Haven seek or receive permission to remove the bridge.

In the meantime, in May, 1972, the city of West Haven commenced the construction of a sewage facility known as the Oyster River pumping station. The general contractor for the project was C. W. Blakeslee & Sons, Inc. The site for this facility was located on a portion of the plaintiffs' land in West Haven known as the "second piece." Prior to commencing this project, the city had not obtained the permission of the plaintiffs[2] to build on their land, nor had it compensated the plaintiffs for the taking or use of their property.

In 1975, after discussions with the office of the city's corporation counsel, the plaintiffs deeded the "second piece" by warranty deed to the city. The city paid the plaintiffs $14,500 for the property. In

[2] There was testimony that in 1972 one of the owners knew of the project and agreed to it, apparently under certain conditions. This information and agreement, however, was never passed on to all of the other owners.

addition, the plaintiffs, in their brief, claim that the attorney for the city orally promised that the city would replace the bridge that it had removed. The city did not follow through on this alleged promise. As a result, the plaintiffs filed the present action.

After a trial to the jury, the plaintiffs were awarded $7424. The trial court then trebled this amount pointing out that it was acting pursuant to General Statutes § 52-566, as set forth above, for a total judgment of $22,272. These appeals followed.

We first take up the city's claim that the trial court erred in trebling the amount of the verdict reached by the jury. In order to assess the city's claim, it is necessary to review the counts upon which the jury reached its decision. The plaintiffs' amended complaint contained eight counts.[3] The trial court submitted only two of these counts to the jury: counts five and six. Both of these counts concern the actions of the city in removing the plaintiffs' bridge. The fifth count, in pertinent part, provides: "7. During the period February 23, 1974 through May 24, 1974, the defendants, acting by its agents, servants or employees, wrongfully took and destroyed the said bridge. 8. The aforesaid act of the defendant City of West Haven constituted a deprivation and a taking of the plaintiffs' private property . . . . 9. The plaintiffs have not received just compensation for the taking of their property from the defendant." The sixth count provides in pertinent part: "8. The acts of the defendant City of West Haven, as aforesaid, constitute wanton conduct and a nuisance with regard to the plaintiffs, to the plaintiffs' great detriment and damage." By contrast, the seventh count, which did not go to the

---

[3] A ninth count was added during the trial.

jury, provides in pertinent part: "7. During the period February 23, 1974 through May 24, 1974, the defendant, City of West Haven, acting by its agents, servants or employees, to wit: C. W. Blakeslee & Sons, Incorporated, then a Connecticut corporation with its place of business in New Haven, Connecticut, willfully removed and destroyed the aforesaid bridge and its approaches. 8. The defendant is a 'person' within the meaning of Sec. 52-566 of the Connecticut General Statutes. 9. The defendant is liable to the plaintiffs pursuant to Sec. 52-566 of the Connecticut General Statutes in that it willfully removed or destroyed the aforesaid bridge and its approaches and therefore is bound to pay the plaintiffs as the owners of said bridge or their successors and assigns treble damages under said statute." In their prayer for relief the plaintiffs requested, inter alia, treble damages pursuant to General Statutes § 52-566.

The city claims that because only the fifth and sixth counts were submitted to the jury, there was no proof that the jury's verdict was founded upon a violation of the statute. Where, as here, the jury returns a general verdict, the city claims that the court was not authorized in trebling the damages assessed by the jury.

In their briefs, both parties recognize that the circumstances under which a party can recover double or treble damages under a statute were set forth in *Tillinghast* v. *Leppert,* 93 Conn. 247, 105 A. 615 (1919). "We require that the complaint shall clearly state such facts as will bring the case within the statute. *Broschart* v. *Tuttle,* 59 Conn. 1, 8, 21 Atl. 925 [1890]. And we require that the claim for relief shall be specifically based upon the statutory

remedy. *Dunbar* v. *Jones,* 87 Conn. 253, 257, 87 Atl. 787 [1913]. We also require the proof to indicate that the verdict was necessarily founded upon a violation of the statute authorizing the extraordinary damages. *Broschart* v. *Tuttle,* 59 Conn. 1, 8, 21 Atl. 925 [1890]; *Dunbar* v. *Jones,* 87 Conn. 253, 256, 87 Atl. 787 [1913]. And we have held that it must clearly appear that the jury found for the plaintiff under the statutory cause of action authorizing these extraordinary damages, and not for any other alleged cause of action. *Dunbar* v. *Jones,* 87 Conn. 253, 256, 87 Atl. 787 [1913]. Where the complaint contains two causes of action, one under the statute authorizing these extraordinary damages and one under the common law, and the verdict is a general one, we have held that the court may not treble the damages assessed by the jury. *Dunbar* v. *Jones,* supra." *Tillinghast* v. *Leppert,* supra, 249–50; see also *George Rose Sodding & Grading Co.* v. *Omaha,* 190 Neb. 12, 13–14, 205 N.W.2d 655 (1973); 25A C.J.S., Damages § 195. The city claims that the verdict reached by the jury was a general verdict and, as such, provides an insufficient basis for the trebling of damages under the *Tillinghast* decision.

The plaintiffs agree in their brief that the jury returned a general verdict but claim that *Tillinghast* provides an exception to the rule that statutory damages cannot be awarded where there is a general verdict. They cite the following portion of that opinion as support for their position. "It is possible that the record may show clearly, notwithstanding the general verdict, that the jury found the damages under the statute allowing the trebling or doubling of the damages, and not for any other alleged cause of action, but where this does not so appear the rule adopted must govern." *Tillinghast*

v. *Leppert,* supra, 250. The plaintiffs, arguing that they come within this exception, claim that "the record shows clearly that the jury, if it found for the plaintiffs, could only have done so on the basis of the defendant's wilful destruction of the plaintiffs' bridge."[4]

---

[4] In the present case, the seventh count clearly set forth sufficient facts to bring this count within the statute. *Broschart* v. *Tuttle,* 59 Conn. 1, 8, 21 A. 925 (1890). The seventh count, however, was not submitted to the jury, nor did the court charge the jury on the issue of wilfulness. Rather, the court charged the jury that they were to decide only counts five and six. Following the charge, the plaintiffs did not take any exception to the court's failure to submit count seven to the jury. In addition, the plaintiffs have not raised any claim regarding the failure to submit the seventh count to the jury or the court's failure to charge on the issue of wilfulness either in their preliminary statement of issues or in their briefs. Because of the plaintiffs' failure to preserve any alleged claim of error arising from the seventh count, either during the trial or upon appeal, we will not consider any such claim. *Presutti* v. *Presutti,* 181 Conn. 622, 626, 436 A.2d 299 (1980); *State* v. *Sumner,* 178 Conn. 163, 171, 422 A.2d 299 (1979). It is also for this reason that we decline to accept the dissenting opinion's position that the seventh count should be remanded to the trial court for a new trial.

This case aptly demonstrates the reason behind the requirement that claims be raised at the trial court. Had the plaintiffs taken a proper exception in this case, the trial court would have been in a position to consider correcting its error before it was too late to do so. See *State* v. *Albin,* 178 Conn. 549, 555-56, 424 A.2d 259 (1979).

Finally, accepting the dissent's contention that the appellate rules do not require an appellee to request that a case be remanded for further proceedings in the event that error is found in the judgment would, in this case, negate the requirement that an issue be raised in the trial court in the first instance. Practice Book § 3063. The dissent claims that the plaintiffs had no reason to preserve any other claim for review because they prevailed in the trial court. After the trial court had charged the jury, however, and before the verdict, they did not know they would prevail. Had the plaintiffs taken a proper exception at that time and requested the trial court to submit count seven to the jury, they may not have prevailed.

Therefore, for the plaintiffs to prevail in this appeal, they must demonstrate that this case comes within the exception set forth in *Tillinghast* v. *Leppert,* 93 Conn. 247, 105 A. 703 (1919).

We cannot agree with the plaintiffs' contention that, notwithstanding the general verdict, this case comes within the exception set out in *Tillinghast*. First of all, neither count five nor six specifically alleges that the city or its agents or employees acted "wilfully" as required by General Statutes § 52-566. While this court has not been called upon to define the meaning of the term "wilfully" as it appears in General Statutes § 52-566, we have done so in other contexts. In discussing what constituted a wilful battery, this court stated in *Alteiri v. Colasso,* 168 Conn. 329, 362 A.2d 798 (1975), that it was not sufficient " 'to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional.' " Id., 333, quoting *Rogers v. Doody,* 119 Conn. 532, 534, 178 A. 51 (1935). In discussing the meaning of the term "wilful misconduct" as used in the Workmen's Compensation Act, § 5226 of the General Statutes (1930 Rev.) (now General Statutes § 31-284), we noted: " 'Misconduct is any improper or wrong conduct. . . . By wilful misconduct is meant either intentional misconduct, that is, such as is done purposely with knowledge, or misconduct of such a character as to evince a reckless disregard of consequences.' " *Bigelow Co. v. Waselick,* 133 Conn. 304, 308, 50 A.2d 796 (1946), quoting *Gonier v. Chase Companies, Inc.,* 97 Conn. 46, 55–56, 115 A. 677 (1921); see also *Milford v. Swarbrick,* 24 Conn. Sup. 320, 323, 190 A.2d 493 (1963); *Lutteman v. Martin,* 20 Conn. Sup. 371, 373–74, 135 A.2d 600 (1957).

A similar definition must be applied in interpreting the term "wilfully" as it appears in General

Statutes § 52-566. Such "wilful" conduct must encompass both the physical act proscribed by the statute and its injurious consequences. That is, for a person to be assessed treble damages, it must be shown that he not only intentionally removed or destroyed a bridge, but that he intended to cause an injury as a result or acted with reckless disregard as to whether an injury would result. The only way for such an injury to occur is if the bridge that is destroyed or removed does not belong to the person doing the destruction or removal. In other words, the person must, prior to taking any action to remove or destroy the bridge, know that the bridge belongs to another or act with reckless disregard of the consequences in failing to determine the true owner. The plaintiffs contend that it is sufficient merely to demonstrate that a person intentionally destroyed or removed a bridge. This interpretation would produce the bizarre result that a person who removes or destroys a bridge belonging to himself could be liable under the statute. We cannot presume that the legislature intended to create such a bizarre result, but intended a "sensible statutory construction." See *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980) and cases cited; *Stoni* v. *Wasicki,* 179 Conn. 372, 376, 426 A.2d 774 (1979); *Bordonaro* v. *Senk,* 109 Conn. 428, 430, 147 A. 136 (1929). In the present case, we cannot agree that a claim of "wrongfulness" and/or "nuisance" as alleged in the fifth and sixth counts is equivalent to the requirement of "wilfulness" as defined above.

In addition, we also note the testimony elicited at the trial does not support the plaintiffs' position so as to bring them within the exception in *Tillinghast.* Morton Hecht, the director of community management for the city, testified that the city did not

determine who was the owner of the bridge prior to removing it. A jury could have reasonably concluded that the city acted "wrongfully" by not determining ownership, and at the same time conclude that it did not act "wilfully." Therefore, we must reject the plaintiffs' contention that the record "show[s] *clearly,* notwithstanding the general verdict, that the jury found the damages under the statute allowing the trebling or doubling of the damages, and not for any other alleged cause of action." (Emphasis added.) *Tillinghast* v. *Leppert,* supra.

We hold that the trial court erred in trebling the damages awarded by the jury where the jury did not explicitly find a violation of General Statutes § 52-566.[5]

We now turn to the issues raised by the plaintiffs in their cross appeal. Their first claim is that the court erred in failing to set aside the verdict as inadequate. The plaintiffs' brief cites the testimony of two witnesses, William J. Roper and Edward N. Halprin, both of whom, the plaintiffs argue, testified that the cost of replacing the bridge was substantially more than the amount of the verdict reached by the jury. The problem with this claim is that, while a transcript of Roper's testimony has been filed, the plaintiffs have not filed a transcript of any of Halprin's testimony *before* the jury regarding the cost of replacing the bridge. Practice Book § 3060V. The only transcript of Halprin's testimony regarding the costs of replacing the bridge that has been filed, and the transcript to which the plaintiffs' brief and appendix cite, contains only Halprin's testimony on the costs of

---

[5] Because of this holding we reserve for another day the issue of whether a municipality is a "person" as that term in used in § 52-566.

replacing the bridge before Judge O'Sullivan while the jury was *outside* the courtroom. The purpose of this testimony was to determine whether Halprin's assessment of the costs of replacing the bridge would be admissible. Due to this omission, we do not have the basis for reviewing whether the court erred in refusing to set aside the jury's verdict as being against the law and inadequate. For example, Halprin's testimony before the jury may have provided a basis for the jury's arriving at the figure they did. We simply do not know. It is a plaintiff's burden to ensure that this court is provided with an adequate appellate record.[6] *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 28, 453 A.2d 769 (1983); *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982); *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 40, 411 A.2d 8 (1979). Therefore, we do not consider this aspect of the plaintiffs' claim.[7]

The final issue raised by the plaintiffs is their claim in their brief that the court erred in directing a verdict for the city on counts one and two in the amended complaint.[8] The short answer to this claim

[6] In this regard, we note that the file indicates that the plaintiffs ordered all of Halprin's testimony from the court reporter. This does not in any way, however, lessen the plaintiffs' burden.

[7] The plaintiffs also claimed that the court erred by informing the jury that their award would be trebled. This claim, as it is set out in the plaintiffs' brief, also cannot be considered because it encompasses the issue of the propriety of the jury's award, which we have declined to review for the reasons we have already stated.

[8] In regard to this issue, we note that in their preliminary statement of the issues the plaintiffs claim that the court erred in directing a verdict on the "First, Second, Third, Fourth, Fifth, Sixth, and Ninth counts." First, as is evident from our opinion, the fifth and sixth counts were decided by the jury. The third, fourth and ninth counts have not been briefed. " 'Where an assignment of error is to be pursued, it must be briefed. Any other rule would work an injustice and hardship on the adverse party. *Cushing* v. *Salmon,* 148

is that the trial court did not direct a verdict on those two counts. Rather, the trial court, having heard those two counts as a court,[9] rendered judgment for the city on those two counts. Nor can it be said that this fact could have taken the plaintiffs by surprise since it is clearly stated both in the judgment[10] and in the city's brief. Notwithstanding these clear pronunciations of the trial court's actions, counsel for the plaintiffs in oral argument continued to claim that the trial court erred in directing a verdict on counts one and two. In any event, because the issue as framed assumes an action not taken by the trial court it will not be considered.

There is error on the defendant's appeal and it is ordered that the case be remanded to the trial court with direction to reinstate the jury's verdict of $7424. There is no error on the plaintiffs' cross appeal.

In this opinion PETERS, PARSKEY and GRILLO, Js., concurred.

Conn. 631, 633, 173 A.2d 543 [1961].' *Fleischer* v. *Kregelstein,* 150 Conn. 158, 160, 187 A.2d 241 (1962)." *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 396 n.17, 449 A.2d 1026 (1982). In oral argument, counsel for the plaintiffs claimed he was not abandoning the claims under the ninth count. Where a party fails to brief an issue, however, it is deemed abandoned. See *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 475–76, 423 A.2d 141 (1979), and cases cited. Therefore, any claims arising from the ninth count will not be considered.

In addition, the plaintiffs, in their preliminary statement of issues, claimed that the court erred in failing to award interest on the judgment. This claim has also not been briefed and is likewise deemed abandoned.

[9] The trial court also heard the third and fourth counts as a court and rendered judgment thereon for the defendants.

[10] The judgment provides, in pertinent part, as follows: "[W]hen all the evidence having been submitted, the Court entered judgment for the defendant on Counts 1, 2, 3 and 4, and directed the verdict for the defendant on Counts 8 and 9."

SHEA, J. (concurring and dissenting). I agree with the disposition of the case made by this court except with respect to the seventh count in which treble damages pursuant to General Statutes § 52-566 were claimed against the city for "wilfully" removing or destroying the bridge. The trial court erroneously assumed that a finding by the jury of a "wrongful" destruction of the bridge under the fifth count or of "nuisance" under the sixth count was equivalent to a finding that the city had acted "wilfully" under § 52-566. The judgment trebling the damages in accordance with the statute as claimed in the seventh count must be vacated, and the verdict for the actual damages sustained, as found by the jury under the fifth and sixth counts, must be reinstated.

Our finding of error on the seventh count, however, should not have the effect of a final disposition of that count, as the opinion of this court treats it. We have set aside the determination of the trial court on the seventh count only because of the erroneous basis upon which it was reached, not because the claim lacks merit or because the evidence was insufficient to support it.

Our appellate rules do not require an appellee to request that a case be remanded for further proceedings in the event that error is found in the judgment. The defendant neither in brief nor in argument has claimed that the error which we have found would justify the directed judgment on the seventh count which the opinion mandates. Such a result would follow if we had sustained the other claims of the defendant, that the evidence was insufficient to support a finding of wilful destruction of the bridge, as required by § 52-566, and that the statute does not apply to municipalities. The

opinion does not reach these grounds for error, but rests wholly upon the absence of any determination by court or jury of the factual issues raised in the seventh count. It compounds the error we have found by effectively resolving those issues in favor of the defendant.

The only explanation offered in the opinion for refusing another opportunity to adjudicate the merits of the seventh count in the trial court is contained in footnote 4, which refers to the lack of any exception by the plaintiffs to the failure of the court to submit that count to the jury as well as to the absence of any claim of error in this appeal related thereto. The transcript indicates that when the court advised the jury that only the fifth and sixth counts would be submitted to them neither party objected. They must be deemed, therefore, to have waived the right to a jury determination of the issues of the seventh count. That waiver, however, cannot be enlarged to constitute a waiver of the claim for treble damages itself. Both parties by their silence effectively consented to a court trial of the seventh count. The trial court declared in response to a question from the jury prior to the verdict[1] that it would treble any amount of damages which the jury might award. Why the plaintiffs should have objected to such action on the part of the trial court, as the opinion

---

[1] The statement in footnote 4 of the opinion that the plaintiffs did not know they would prevail on the seventh count before the verdict is subject to misinterpretation. When the jury inquired, "Are treble damages automatically then added to our findings?", the court responded, "The answer to that is yes. I will handle that after I hear from you." The plaintiffs, therefore, knew that any damages found by the jury would be trebled automatically by the court, a result which would give them the maximum relief requested under the seventh count. It is true, of course, that they did not know that the jury would award them any damages.

of this court assumes, I cannot imagine. The plaintiffs had absolutely no reason to except to the manner in which the trial court handled the seventh count or to raise any issue related thereto on appeal. A litigant can hardly be expected to object to rulings favorable to him.

I dissent, therefore, from the failure to remand the seventh count to the trial court for a new trial.