[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, William F. Saunders, appeals pursuant to General Statutes, Sec. 22a-43 the decision of the defendant, Town of Ridgefield Inland Wetlands Commission (IWC), denying him permission to conduct regulated activities, including the construction of a house, driveway and a septic system on a lot containing wetlands. The IWC has authority to act pursuant to General Statutes, Sec. 22a-42.
On May 8, 1992, the plaintiff submitted an application to the IWC for permission to conduct regulated activities. (ROR, Item e.) On June 2, 1992, after walking the property, the IWC issued a summary ruling that unanimously denied the plaintiff's application. (ROR, Item m.)
On June 9, 1992, the IWC set aside the "resolution of a denial" and called a plenary hearing pursuant to Sec. 4.01(B) of Ridgefield's Inland Wetlands Regulations. (ROR, Item n.) On July 6, 1992, the plaintiff submitted an application for a plenary ruling. (ROR, Item r.) On July 7, 1992, the IWC met and scheduled a public hearing on the plaintiff's application. (ROR, Item s.) On July 21, 1993, the IWC conducted the public hearing. (ROR Item x.)
On July 28, 1992 the IWC denied the plaintiff's application. (ROR, Item aa.) In denying the application, the IWC stated four CT Page 8127 reasons. (ROR, Item bb.) First, the IWC found that the proposed activity would damage a significant area of the wetlands. Second, the IWC found that the application would not comply with the intent of Ridgefield's Inland Wetlands Regulations as outlined in section 1.02. Third, in assessing the criteria of section 7.00 of its Regulations, the IWC found: (1) the proposed activity may contaminate Kiah's Brook, a tributary to the Titicus River which feeds the Titicus Reservoir in New York; (2) the applicant did not present any feasible alternatives; (3) that 85 percent of the parcel contains wetlands, 34 percent of which would be disturbed by the proposal; (4) the proposed activity might have a negative impact on the pond located on the property. Fourth, the IWC found that the storm water runoff from the driveway and lawn may contain salts, fertilizers, herbicides and pesticides that would impact on the wetlands. (ROR, Item bb.)
The plaintiff appeals from the IWC's decision denying the application.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions that created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
General Statutes § 22a-43(a) provides in pertinent part:
 [A]ny person aggrieved by any . . . decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the . . . municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action . . . may, . . . appeal to the superior court for the judicial district where the land affected is located. . . .
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). "The question of aggrievement is essentially one of standing."DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,573 A.2d 1222 (1991). An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, supra, 308; BossertCorporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968). CT Page 8128
The plaintiff submitted a copy of his deed as proof of ownership of the subject property. (See Exhibit A, warranty deed.) Therefore, the court finds that the plaintiff is aggrieved.
Any person aggrieved by a decision made pursuant to sections22a-36 to 22a-45, inclusive, by the municipality, "may, within the time specified in subsection (b) of section 8-8 from the publication of such . . . decision . . . appeal to the superior court for the judicial district where the land affected is located. . . ." General Statutes, Sec. 22a-43(a). An aggrieved party may take an appeal to the Superior Court within fifteen days from the date when notice of such decision was published. General Statutes, Sec. 8-8(b). In the present case, notice of the IWC's decision was published in the Acorn Press on August 6, 1992. (ROR, Item dd.) On August 10, 1992, the plaintiff commenced this appeal when the sheriff served process on the chairman of the IWC and the Ridgefield town clerk. Thus the plaintiff's appeal is timely.
"In challenging an administrative agency action, the plaintiff has the burden of proof." (Citations omitted.) Samperiv. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286
(1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion." Id. "[T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Id. The reviewing court must sustain the agency's determination if the record discloses evidence that supports any one of the reasons given. Id., 587-88. Although raised in the complaint, issues that are not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16,526 A.2d 1311 (1987); DeMilo v. West Haven, 189 Conn. 671, 681-82
n. 8, 458 A.2d 362 (1983).
The plaintiff argues that the IWC's decision was illegal, arbitrary, and an abuse of discretion because: (1) the IWC ignored credible uncontradicted expert testimony; (2) the decision results in a taking under General Statutes, Sec. 22a-43a, Connecticut constitution, article first, and the fifth andfourteenth amendments to the United States constitution; and (3) the IWC failed to consider all the relevant circumstances in General Statutes, Sec. 22a-41. The plaintiff also argues that his lot was exempt from regulation under General Statutes, Sec. CT Page 812922a-40(a)(2) and a decision of the Superior Court in PaupackDevelopment Corp. v. Conservation Commission,8 Conn. L. Rptr. 223 (January 14, 1993, Fuller, J.). The IWC argues that the reasons given are supported by substantial evidence.
The IWC's first reason for denial was that the proposal would damage a significant area of wetlands. The plaintiff argues that this reason is subjective and vague.
The record reveals that at the June 2, 1992 meeting, several of the commissioners pointed out that the proposed house would be on land that was predominantly wetlands and that the soil was not suitable for building. (ROR, Item m.) At the public hearing, the plaintiff's engineer agreed that the project would require that 35 percent of the wetlands be disturbed if the house was built. (ROR, Item x, pp. 47-49.) Furthermore, at the public hearing, town planner, Ozzie Inglese, noted that the maps that were submitted by the plaintiff indicated that only 200 square feet of the proposed building area would be on dry soil. (ROR, Item x, p. 49.)
The plaintiff's application states that approximately 900 cubic yards of fill would need to be placed in the wetlands area in order for the house to be built. (ROR, Item r.) This would require approximately 65 truck loads of fill to be brought to the site in order to complete the project. (ROR, Item aa, p. 3.) At the public hearing, the plaintiff's engineer agreed the project would require excavation as deep as 6 feet to find stable soil at the site of the proposed house. (ROR, Item x, p. 47.) George Orlan, chairman of the Conservation Commission, sent a letter to the IWC that stated that the house, driveway and septic tank would be located in the wetlands area, and that the leaching field would be located adjacent to wetlands. (ROR, Item v.) The letter noted, "there will be material adverse effects on the wetland and adjacent pond. Accordingly, the Commission strongly recommends that this application be denied." (ROR, Item v.) The evidence in the record supports the IWC's finding that the proposed activity would damage a significant area of the wetlands.
The second and third reasons that the IWC gave in denying the plaintiff's application were that it did not meet the requirements of sections 1.02 and 7.00 of the Inland Wetlands and Watercourse Regulations of the Town of Ridgefield. (ROR, Item bb.) Section 1.02 of the Regulations states that the Regulations CT Page 8130 are designed to protect wetlands by:
(1) Minimizing their disturbance and pollution;
 (2) Maintaining and improving water quality in accordance with the highest standards set by federal, state and local authorities;
(3) Preventing damage from erosion, turbidity or siltation;
 (4) Preventing loss of fish and other beneficial aquatic organisms, wildlife, vegetation and the destruction of the natural habitats thereof;
(5) Deterring and inhibiting the danger of flooding; and
 (6) Protecting the Town of Ridgefield's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement.
Section 7.00 provides:
 The board shall take into consideration and make findings with respect to all relevant facts and circumstances, including, but not limited to, the following:
A. All evidences [sic] offered at the public hearing.
 B. The environmental impact of the proposed action or use, including: . . .
C. The alternatives to the proposed activity or use.
 D. The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity.
 E. Irreversible and irretrievable commitments of resources which might be involved in the proposed activity or use.
 F. The character and degree of injury to, or interference with the public health and safety which might be caused or threatened.
G. The suitability or unsuitability of such activity to the CT Page 8131 area for which it is proposed.
 H. The availability of public facilities, services, utilities and other improvements.
 I. Any general or specific regulations or recommendations of the State of Connecticut Department of Environmental Protection. . . .
In addition to the record evidence in support of the IWC's first reason for denial, the record reveals that at the June 2, 1992 meeting, Commissioner Gelfman noted that the watercourse that would be affected was Kiah's Brook, a main tributary of the Titicus River which flows into the Titicus Reservoir in New York. (ROR, Item m.) As previously noted, the plaintiffs engineer agreed that the project would require that 35 percent of the wetlands would be disturbed if the house were built. (ROR, Item x, pp. 47-49.) The record also reveals that the application involved septic tanks that would be placed in the wetlands and leaching fields that would be placed adjacent to the wetlands areas. (ROR, Items aa, p. 1, f, v, x, pp. 29-31.) The town sanitarian stated that the location of the septic tanks and fields would be a problem because he would never recommend wetlands soil for septic use. (ROR, Item aa, p. 1.)
The evidence in the record supports the IWC's conclusion that the plaintiff's proposed house would violate section 1.02 of the Wetlands Regulations. A review of the record indicates that the IWC considered the factors set forth in section 7.00 of the Regulations and found in light of these factors that: (1) the proposed activity may contaminate Kiah's Brook, a tributary to the Titicus River which feeds the Titicus Reservoir in New York; (2) the applicant did not present any feasible alternatives; (3) 85 percent of the parcel contains wetlands, 34 percent of which would be disturbed by the proposal; (4) the proposed activity might have a negative impact on the pond located on the property. (ROR, Item bb.) The evidence in the record supports the IWC's finding, made in light of section 7.00, that the proposed activity would not comply the intent of Ridgefield's Inlands Wetlands Regulations, Sec. 1.02.
The fourth reason for denial was that the plaintiff's proposed driveway might have an impact on the wetlands because the runoff from it may contain fertilizers or pesticides that could impact on the wetlands. The record reveals that at the CT Page 8132 public hearing the plaintiff's engineer agreed that the house would be on a grade and that water would drain off the site by the driveway. (ROR, Item x, pp. 39-40.) The record further reveals that the water would drain off towards the rear of the property which is in the direction of the pond. (ROR, Item x, pp. 40-41.) The site plan indicates that the end of the proposed driveway would be within 40 feet of the pond. (ROR Item f.) The plaintiff's planting plan indicates that the whole western and southern portion of the driveway and the southern portion of the house would be surrounded by the lawn. (ROR, Item f.) The plaintiff's engineer also agreed that the surface area of the driveway would be approximately 2,000 square feet. (ROR, Item x, pp. 57-58.) At its July 28, 1992 meeting, the IWC found that all 2,000 feet of the driveway would be in the wetlands. (ROR, Item aa, p. 1.) The plaintiff's site plan corroborates this finding. (Item f.) The record supports the IWC's fourth reason, that the proposed driveway would have a negative impact on the wetlands.
Therefore, the court finds that the record reveals substantial evidence to support the IWC's denial.
The plaintiff argues that all the experts were in agreement that the project could be built on the site and thus the IWC ignored the expert testimony. The plaintiff also argues that the IWC's receipt of the opinion of the town sanitarian concerning the septic system and the IWC's raising the issues of the amount of wetlands to be disturbed and driveway runoff after the public hearing constituted illegal post-hearing evidence. The plaintiff's experts testified that the plaintiff's plans would have the least possible impact on the subject wetlands. (ROR, Item x, pp. 9-17, 47-49, 59, 64-68.)
Municipal boards are permitted to consult municipal planning, engineering and other professional technical consultants after the close of the public hearing while the board is in the process of considering an application. Holt-Lock, Inc. v. Zoning Planning Commission, 161 Conn. 182, 185, 286 A.2d 299 (1971). Furthermore, it is well settled that a board is not required to believe any witness:
 An administrative agency is not required to believe any witness, even an expert. [Citations omitted.] Nor is an agency required to use in any particular fashion any of the materials presented to it as long as the conduct of the hearing is fundamentally fair. CT Page 8133
Manor Development Corporation v. Conservation Commission,180 Conn. 692, 697, 433 A.2d 999, 1003 (1980). Board members are entitled to base decisions on their personal knowledge. Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525.
The record reveals that prior to the public hearing, the Ridgefield town sanitarian, Edward L. Briggs, issued a report that granted the conditional approval of the Health Department. (ROR, Items o, g.) Final approval, however, was subject to receipt of the building plans. (ROR, Items c, aa.) After the public hearing, Briggs learned that the project was to be built on wetlands and he stated that he would not recommend wetland soil for septic construction. (ROR, Item aa, p. 1.)
In the present case, the town sanitarian gave the IWC his opinion concerning the installation of a septic system on wetlands after the public hearing. (ROR, Item aa, p. 1.) The septic system was discussed at length at the public hearing. (ROR, Item x, pp. 27-32.) Furthermore, the record reveals that the issue of the amount of the wetlands to be disturbed and the issue of driveway runoff was also raised at the public hearing. (ROR, Item x, pp. 47-49, 57-58.) Therefore, the court finds that these issues were not raised for the first time after the public hearing.
Therefore, the court finds that the town sanitarian's communications with the IWC were technical assistance as in Holt-Lock,Inc. v. Zoning Planning Commission, supra, 185, and not illegal post-hearing evidence. The issues concerning the amount of the wetlands to be disturbed and driveway runoff were both raised at the public hearing. Thus, the court finds that the IWC's post-hearing discussion of these issues was not illegal. The court finds that the IWC was not required to believe the plaintiff's experts. The plaintiff's appeal cannot be sustained on any of these grounds.
The plaintiff also argues that the IWC's denial of the plaintiff's application constitutes an unconstitutional taking of the plaintiff's property.
Questions of unconstitutional takings within the context of inland wetlands appeals present an ad hoc factual inquiry. Gil v.Inland Wetlands Watercourses Agency, 219 Conn. 404, 406,593 A.2d 1368 (1991). In determining whether a taking has occurred, CT Page 8134 the court must first establish that there was a final decision by an agency and then conduct a two-pronged analysis. Id., 415. The property owner bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property and that such decision is final. Id. "If a property owner has not obtained a final decision from the administrative agency applying the regulation, the reviewing court lacks jurisdiction to rule on a taking claim." Port ClintonAssociates v. Board of Selectmen, 217 Conn. 588, 604,587 A.2d 126 (1991). "`[I]n most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is `final' for the purposes of the takings clause.'" Gil v. Inland Wetlands Watercourses Agency, supra, 417. The court in Gil, refused to find a taking by an inland wetlands and watercourses agency after the agency denied the applicant's fourth application. The applicant had not proposed a more modest alternative to the house that it proposed to build, and thus, the court held that the agency's decision was not final. Id.
In the present case, this is the plaintiff's first application. (ROR, Item aa, p. 2.) The record reflects that the plaintiff never submitted plans that would demonstrate how many square feet the proposed house would be. (ROR, Item aa, p. 1, Item f.) At the public hearing on July 21, 1992, the plaintiff's attorney stated that the maximum area of the house and garage could be as high as 2,250 square feet. (ROR, Item x, pp. 68-69.) The IWC noted that the plaintiff failed to present any more modest alternatives. (ROR, Item aa, p. 1.)
Based on the evidence in the record, the court finds that the plaintiff has not met his burden of proving that the IWC's decision is final. Therefore, the court finds that it lacks jurisdiction to consider the merits of the plaintiff's taking claim.
The plaintiff also argues that his lot is exempt from wetlands regulation pursuant to General Statutes, Sec. 22a-40(a)(2), and Paupack Development Corp. v. Conservation Commission,8 Conn. L. Rptr. 223 (January 14, 1993, Fuller, J.). General Statutes, Sec. 22a-40 provides in pertinent part:
 (a) The following operations and uses shall be permitted in wetlands and watercourses, as of right: . . . CT Page 8135
 (2) A residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit has been issued or the subdivision has been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of promulgation of the municipal regulations pursuant to subsection (b) of section 22a-42a or as of July 1, 1974, whichever is earlier, and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was obtained on or before July 1, 1987.
The language that was added by Public Act 87-533, Sec. 2 was: "`and further provided no residential home shall be permitted asof right pursuant to this subdivision unless the permit wasobtained on or before July 1, 1987. . . .'" Paupack DevelopmentCorp. v. Conservation Commission, 229 Conn. 247, 253,640 A.2d 70 (1994). In Paupack Development Corp. v. ConservationCommission, supra, 8 Conn. L. Rptr. 223, the court held that section 22a-40(a)(2)(ii), as amended, only applied to the building permit portion of section 22a-40(a)(2)(i) and not to section 22a-40(a)(2)(ii) which applies to subdivisions. The court held that approved subdivisions that complied with the rest of the statute were still exempt. Id.
The Supreme Court reversed this decision in PaupackDevelopment Corp. v. Conservation Commission, supra,229 Conn. 251. "The language of P.A. 87-533 sets another deadline, and by its plain language is applicable to statutory subdivision (a)(2)(ii), the existing exemption for the subdivision of real property. Such a reading of P.A. 87-533 eliminated the as of right exemption for undeveloped subdivisions existing prior to 1974 for which a building permit had not been issued." Id., 254-55. Pursuant to the Supreme Court's decision in PaupackDevelopment Corp. v. Conservation Commission, supra, the court may find that plaintiff's lot is not exempt under General Statutes, Sec. 22a-40(a)(2)(ii) because there is no evidence in the record showing that the plaintiff obtained a building permit on or prior to July 1, 1987.
In his amended complaint, the plaintiff alleges that the IWC denied him uses incidental to the enjoyment of residential property permitted as of right by section 22a-40(a)(4). The plaintiff also alleges that the IWC failed to consider all the relevant facts and circumstances as required by General Statutes, Sec. 22a-41. These two arguments were not briefed, and therefore the court deems them abandoned. State v. Ramsundar, supra, 16; CT Page 8136DeMilo v. West Haven, supra, 681-82 n. 8.
For all the foregoing reasons, the plaintiff's appeal is dismissed.
Stodolink, J.